THE MARINE BANK OF BUFFALO, RESPONDENT, v. JOSIAH M. FISKE, GEORGE D. SMITH AND ARTHUR D. FISKE, APPELLANTS.*

*Bill of lading — transfer of, as security for draft — title to goods shipped — Factors' act — chap. 179 of 1830 — Usury — State Banks — chap. 163 of 1870.*

G. & H., commission merchants at Chicago, purchased certain Chicago wheat for one N., a merchant doing business at Buffalo, and took a bill of lading therefor to their own order addressed to the care of N. or his assigns. G. & H. having no funds of N. in their hands, procured a bank in Chicago to discount a draft drawn by them on N. for the price of the wheat, and to secure the payment thereof annexed thereto the bill of lading indorsed by them in blank. The draft, with the bill of lading annexed, having been forwarded to the plaintiff for collection, an agreement was entered into between the plaintiff and N. while the wheat was still in transit, by which the former discounted a note of the latter to enable him to pay the draft drawn against him, and N. to secure the payment thereof, transferred the bill of lading of the wheat to the plaintiff. *Held,* that the latter thereby acquired the legal title to the wheat mentioned in the bill of lading.

N. subsequently procured the master of two canal boats to execute and deliver to him two bills of lading, one for 7,600 and one for 7,400 bushels of Milwaukee wheat, stated to have been loaded on the boats consigned to the defendant in New York, who thereafter in good faith, and relying upon the said bills of lading, discounted two drafts drawn by N. on account thereof. At

* Decided October term, 1876.

the time of the making and discounting of the bill no such wheat had been delivered on the boats, nor was such in possession of N., nor were they made with reference to the Chicago wheat which had not yet arrived at Buffalo. After the arrival of the Chicago wheat, N., without the knowledge of the plaintiff, procured the same to be loaded upon the said canal boats and sent to the defendants, who thereafter sold the same with full notice of the claim of the plaintiff thereto.

*Held,* (1) that the defendants were liable to the plaintiff for a conversion of the wheat; (2) that the case did not come within the " factors' act," chapter 179 of 1830.

Since the passage of chapter 163 of 1870 the only forfeiture imposed upon the banks of this State for the taking of usurious interest, is the loss of twice the amount of the excessive interest.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

*Wm. H. Greene,* for the appellants.

*Sherman S. Rogers,* for the respondent.

TALCOTT, J. :

On the 9th of November, 1871, Messrs. Nichols, Gibson & Helmer, commission merchants and grain dealers of Chicago, purchased at that place at the request and as agents for Ozias L. Nims and David Long of Buffalo, doing business at the latter place, under the name of O. L. Nims, agent, 14,330⁵⁰⁄₆₀ bushels of wheat known in the market as No. 3 Chicago wheat, and caused the same to be shipped on board the propeller Empire State to Buffalo, on their own account, consigned to the care of Ozias L. Nims, at Buffalo. Nichols, G. & H., at the time of the shipment, received from the agents of the propeller a bill of lading, whereby the owners acknowledged the shipment and bound themselves to deliver the wheat at Buffalo, for account of Nichols, G. & H. to the care of Nims or his assignees or consignees, on payment of the freight and charges. Nichols, G. & H. not being in funds of Nims to pay for the wheat, for the purpose of raising the money to pay for the same, drew on said Nims at Buffalo, to the order of the cashier of the Third National Bank of Chicago, for $17,329.25, and attached thereto the said bill of lading, according to the custom of such business, and indorsed the same. The Third National

Bank of Chicago, thereupon, and on the faith of said bill of lading, discounted the draft in question for the benefit of said Nichols, G. & H. and forwarded the draft and bill of lading to the plaintiff, the Marine Bank, at Buffalo, for collection. The draft and bill of lading arrived at Buffalo and were in the hands of the plaintiff on the 11th day of November, 1871. The wheat mentioned in the bill of lading not having yet arrived, but being them *in transitu*, thereupon said Nims applied to the plaintiff for a discount to the amount of $17,300, for the purpose of enabling him to pay said draft of Nichols, G. & H., to which proposal the plaintiff assented and discounted the note of O. L. Nims, agent, payable to the order of O. L. Nims, agent, ten days after date, at the plaintiff's office, for $17,300, and as a part of the arrangement agreed that the said bill of lading and the wheat therein specified, should be indorsed, transferred and delivered to the plaintiff as security for the payment of the said note. . The draft of Nichols, G. & H. was thereupon paid with the proceeds of said discount and other moneys furnished by said Nims. The bill of lading was indorsed by O. L. Nims, agent, and was retained by the plaintiff, as its security for the payment of the note, according to the usual custom of such business at Buffalo. The note was never paid, but remained unpaid at the time of the trial.

The inquiry here arises, whether the plaintiff by virtue of the transaction and the indorsement to it acquired any and what title to the wheat specified in the bill of lading, and then *in transitu* on the Empire State.

Nims (or the parties doing business under the name of "Nims, agent") was the general owner of the wheat which had been purchased for his account, the draft of Nichols, G. & H. for the purchase-money being paid as part of the arrangement with the plaintiff. The original bill of lading had been sent to the plaintiff with the blank indorsement of Nichols, G. & H. They had the bill of lading solely as security for the payment of their draft on Nims, and so transferred it to the Third National Bank of Chicago, by which it had been transferred to the plaintiff as security for the collection of the draft. On the payment of the draft of Nichols, G. & H., Nims became, in fact, the consignee and owner of the cargo, and his indorsement of the bill of lading to the plaintiff, with the

intent and for the purpose of transferring the same and the goods therein specified to the plaintiff, as security for the payment of the note, transferred to the plaintiff the legal title to the wheat mentioned in the bill of lading. (*Manf. and Traders' Bk.* v. *Farmers and Mechs.' Bk.*, Court of Appeals, MSS.)

It is insisted by the defendants that more than seven per cent was exacted by the plaintiff from Nims, upon the discount of the promissory note, and for this reason the transaction was usurious, and defeats the title attempted to be acquired by the plaintiff by virtue of the transfer of the bill of lading. Without discussing the question whether usury can be set up in such a case, in consequence of an omission to set it up in the pleadings, it is sufficient to say that under the act of 1870, chapter 163 (Sess. Laws of 1870, p. 437), the former rule, by which the contract upon which a greater rate of interest than seven per cent per annum is secured was void, is abrogated so far as this plaintiff is concerned, and the only forfeiture resulting from the taking of excessive interest, is confined to the forfeiture of twice the amount of excessive interest taken, which is to be sued for and recovered by the persons paying the same, or their legal representatives. Nims, not being a party to the action, the evidence that a greater rate of interest than seven per cent was exacted on the discount of the note, was wholly immaterial for any purpose, and was properly rejected by the referee. The defendant also objects to the recovery by the plaintiff, upon the ground that the demand made by it was of the entire cargoes of the two canal boats, upon which the wheat was subsequently loaded, whereas those boats contained a comparatively small quantity of wheat not a part of the cargo of the Empire State. It is a sufficient answer to this objection that it is not necessary to rely upon the demand and refusal as evidence of the conversion, inasmuch as the defendants, before the commencement of the action, sold the entire amount of wheat contained on the two canal boats, and the recovery of the plaintiff was limited to the amount of the note held by it, which was much less than the value of the portion of the wheat on the two canal boats, in which it had the special property.

The defense attempted to be made to the action, is that the defendants made advances to Nims on the same wheat, represented to be loaded upon two canal boats, the Hattie Eliza, and the Little-

field. The facts concerning this latter transaction, as found by the referee upon the evidence, are, in substance, as follows: On the fourteenth day of November, Nims procured one Bissell, owner of two canal boats, the Hattie Eliza and Littlefield, to execute two bills of lading, signed by A. A. Bissell & Co., stating that the said Nims had shipped, on the said boats, as follows: On the Littlefield, 7,600 bushels of No. 2 Milwaukee wheat, and on the Hattie Eliza, 7,400 bushels of No. 2 Milwaukee wheat, to be transported to the city of New York, and there delivered to the defendants on account of said O. L. Nims, agent. These two canal bills of lading were delivered to said Nims. These bills of lading were utterly false, no wheat being, at the time they were executed, shipped on board of the said canal boats, or either of them, or in any way placed under the control of the master or owners of said boats. On receiving the canal bills of lading, Nims drew on the defendants at sight to his own order two several drafts, viz.: One draft dated November 14, 1871, directed to the defendants at New York, directing them to pay $9,500, and charge the same to the account of the Littlefield, and one other draft, same date, and in like terms, for $9,250. Each of these drafts was attached to the bill of lading, to which it appertained; each of the said drafts, with its bill of lading, was presented to and paid by the defendants, upon the faith of the bill of lading attached thereto, and at the time of the payment of the said drafts, there was then, in fact, no wheat whatever upon said canal boats, or either of them.

The propeller Empire State arrived at Buffalo on the 16th day of November, 1871, and on the next morning discharged her cargo of wheat into the Niagara elevator, without any notice to the plaintiff of the arrival of said wheat, or the place at which it was delivered. Nims, to whose care the wheat was consigned by the Empire State bill of lading, caused the wheat to be unloaded at the elevator, and took from the elevating company a warehouse receipt to his own order. The plaintiff had taken no steps to obtain possession of the wheat, and had not notified the master of the Empire State that it held the bill of lading. At the time of procuring the canal bills of lading, Nims had in transit on the lakes, and upon certain other vessels, wheat known in the market as No. 2 Milwaukee wheat, which he intended to ship on the said two canal

boats, when it should arrive at Buffalo, to be covered by the said two bills of lading. But the defendants acted in good faith in paying the drafts of Nims drawn against the two canal bills of lading, and had no notice at the time of payment, that the said bills of lading were false, nor did it appear that No. 3 Chicago wheat, specified in the bill of lading of the Empire State, could be distinguished from No. 2 Milwaukee on ordinary inspection. But Nims had no reference to the cargo of the Empire State when he procured the canal bills of lading, and the defendants had no knowledge of the existence of the cargo of the Empire State, or of the transactions between Nims and the plaintiff in reference thereto. The plaintiff gave no authority to Nims to take the possession or control of the wheat on board the Empire State, or afterwards. But on the 17th of November, 1871, the said Nims, without the knowledge or consent of the plaintiff, caused the wheat, which had been deposited by the Empire State, to be loaded on the two canal boats, and directed the captains of said boats to proceed with the same to New York, and deliver the same to the defendants, which was done. Before the sale of the wheat by the defendants, they were fully notified of the claim of the plaintiff to the same, and of the facts and circumstances under which the same arose.

We are of the opinion that the defendants acquired no title to the wheat which constituted the cargo of the Empire State, by reason of their advances on the faith of the canal bills of lading. At the time when the advances were made by the payment of the drafts of Nims there was in fact no wheat whatever on board said canal boats, or even in the custody of Nims, but the bills of lading executed by Bissell & Co. were wholly false and fraudulent.

The defendants insist that the plaintiff had in some way forfeited its title, by negligence in omitting to exercise vigilance in securing the actual possession of the cargo of the Empire State so that Nims, by reason of this neglect and lack of vigilance, was enabled to get the apparent possession or control of the property. It perhaps might be an answer to this claim, that at the time when the defendants made the advances on the canal bills of lading Nims had not the possession or control of the wheat (which had not yet arrived at Buffalo), and that the canal bills of lading had not been

made or sent forward with any reference to the cargo of the Empire State, or any expected possession thereof. But if we are correct in the supposition that the transaction between Nims and the plaintiff and his indorsement and transfer of the bill of lading to the plaintiff conferred on the latter the legal title to the wheat, it is not perceived how any neglect or want of vigilance in asserting its title could forfeit it, in the absence of any positive act or consent, whereby the apparent control of the property was conferred on Nims. The plaintiff had done nothing to give any credit to the canal bills of lading, but was a stranger to and wholly ignorant of the transaction in which they were issued. The defendants had parted with their money by way of advances on the false canal bills of lading, without any possession or apparent ownership of the wheat in controversy, in Nims. And the subsequent wrongful act on the part of Nims, in taking possession of the wheat and causing it to be sent to the defendants by the same canal boats, of the owners of which he had procured the false bills of lading, could not have the effect of conferring title on the defendants, even if intended by Nims for that purpose. The defendants had been defrauded by relying upon the false bills of lading, and had not in fact made any advances upon the wheat in controversy.

We do not think the act of 1830, commonly called the "factors' act," affects this case. The wheat was not shipped in the name or for the account of Nims with the knowledge or consent of the plaintiff, nor was Nims intrusted with the possession thereof at all by the true owner, much less "for the purpose of sale, or as security for any advances to be made or obtained thereon." In point of fact, no advances had been made by the defendants upon the wheat in controversy. The advances had been made on the credit of false bills of lading, and before Nims had obtained possession of the cargo of the Empire State, and the pecuniary obligation of Nims to the defendants, growing out of the fraud practised on them by means of the false bills of lading, was in the nature of a precedent debt, and such as is described in the fourth section of the "factors' act," which provides that in such case the creditor shall not acquire or enforce any right to the merchandise other than such as might have been enforced by Nims himself, admitting that he was the agent of the plaintiff in taking possession

of the wheat, which, as we understand the case, is the point sought to be established by the defendants by proof of other transactions between the plaintiff and Nims, with reference to other cargoes. We think the defendants cannot claim that they made any advances on the wheat in controversy, or upon any possession thereof by Nims, and the advances which they did make on the false bills of lading, were no more advances on the wheat in controversy than upon any other wheat, which might have been at the same time in process of transit on the lakes, and of which Nims might have wrongfully acquired the possession subsequent to the advancing by the defendants. If this conclusion is correct, it seems to be an answer to all the points of the defense, whether based upon the particular circumstances in this case, or upon the mode in which similar business had been transacted between the plaintiff and Nims.

The judgment is affirmed.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Ordered accordingly.